**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MODESTO IRRIGATION DISTRICT, et al.,<br><br>        Plaintiffs,<br><br>             v.<br><br>CARLOS M. GUTIERREZ, et al.,<br><br>        Defendants,<br><br>             and<br><br>NORTHERN CALIFORNIA COUNCIL OF FEDERATION OF FLY FISHERS, et al.,<br><br>        Intervenor-Defendants. | 1:06-cv-00453 OWW DLB<br>1:06-CV-00308 OWW DLB<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION CONSOLIDATE.** |
| CALIFORNIA STATE GRANGE, et al.,<br><br>        Plaintiffs,<br><br>     v.<br><br>NATIONAL MARINE FISHERIES SERVICE, et al.,<br><br>        Defendants,<br><br>             and<br><br>FEDERATION OF FLY FISHERS, et al.,<br><br>        Intervenor-Defendants. | |

I.  <u>INTRODUCTION</u>

1

Before the court for decision is a motion to consolidate for the purposes of summary adjudication the claims in *Modesto Irrigation District, v. Gutierrez.*, 1:06-CV-453 OWW DLB ("*MID II*") with those in *California State Grange v. National Marine Fisheries Service*, 1:06-CV-0308 OWW DLB ("*Grange*").  The apparent overlap between these cases would ordinarily invite consolidation.  However, oral argument on cross motions for summary judgment in the *Grange* case was already heard on January 8, 2007, more than two weeks prior to the filing on January 24, 2007 of the *MID II* Plaintiffs' motion to consolidate.  Nevertheless, the *MID II* Plaintiffs assert that consolidation for the purposes of summary judgment would conserve judicial resources and possibly clarify a number of issues for the Court.  Federal Defendants and Defendant-Intervenors oppose consolidation.

## II.  BACKGROUND

On January 5, 2006, the National Marine Fisheries Service ("NMFS") published a final decision, listing under the Endangered Species Act ("ESA") certain populations of West Coast Steelhead (a life form of the species *O. Mykiss*), including five populations of *O. mykiss* in California:  Southern California, South-Central California Coast, Central California Coast, California Central Valley, and Northern California.

The *Grange* case, filed by a coalition of forestry interests on March 20, 2006, raises a number of largely legal (as opposed to factual or scientific) challenges to the listing with respect to all five California populations.  As counsel for movant declares: "Neither the Grange Plaintiffs' points and authorities

2

in support of their motion for summary judgment nor their combined points and authorities [] opposing the Defendants' cross-motion for summary judgment makes even a single reference to the Administrative Record.  Both briefs rely exclusively on case law, statutes, legislative history and information contained in the Federal Register."  (*MID II*, Doc. 58 at ¶10.)

*MID II*, filed by a coalition of irrigation and water districts on April 14, 2006, challenges only the California Central Valley *O. mykiss* listing.  In contrast to the *Grange* case, the *MID II* Plaintiffs plan to raise numerous factual arguments based upon information contained within the administrative record.  (*Id*. at ¶11.)

**A.    Summary of the Complaints**.

The *Grange* case alleges:

(1)   The listings unlawfully distinguish between resident and migratory *O. mykiss*.

(2)   The listings unlawfully distinguish between hatchery and naturally-spawning *O. mykiss*.

(3)   The listings fail to ensure that each population is defined in compliance with the statutory requirement that members of a listed population "interbreed[] when mature."

(4)   In listing the five California populations of *O. mykiss*, NMFS unlawfully abandoned its long-standing practice of applying its ESU Policy to listings of *O. mykiss* in favor of applying the joint NMFS-FWS DPS Policy.

3

    (5)    The ESA section 4(d) protective regulation promulgated in connection with the listings unlawfully distinguishes between hatchery and naturally-spawned *O. mykiss*.

*MID II* raises the following ten claims, all of which concern only the California Central Valley *O. mykiss* listing:

    (1)    NMFS's decision to list only the anadromous life form of California Central Valley *O. mykiss* was based on an unlawful interpretation of the statutory definition of "species," which includes "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature."

    (2)    The best available science does not support NMFS's conclusion that the anadromous form of Central Valley *O. mykiss* is "markedly separate" from the resident form.

    (3)    NMFS acted arbitrarily and capriciously by (a) failing to collect adequate scientific and commercial data on both forms of California Central Valley *O. mykiss* (anadromous and resident) and (b) failing to incorporate and use scientific and commercial data submitted by the *MID II* Plaintiffs and others.

    (4)    NMFS failed to adequately justify abandoning its practice of applying the ESU Policy to *O. mykiss* in favor of applying the DPS Policy.

    (5)    NMFS's conclusion that the anadromous form of California Central Valley *O. mykiss* constitutes its own "distinct population segment" is inconsistent with

4

|   |   |
|---|---|
| 1 | USFWS's application of the same policy to other Pacific |
| 2 | salmonids, including the coastal cutthroat trout and |
| 3 | the Coastal-Puget Sound bull trout. |
| 4 | (6) NMFS's decision to rely on physical characteristics to |
| 5 | distinguish anadromous *O. mykiss* from resident *O.* |
| 6 | *mykiss* is arbitrary and capricious.  Because anadromous |
| 7 | California Central Valley *O. mykiss* exhibit a large |
| 8 | overlap in such characteristics (e.g., size) vis-a-vis |
| 9 | resident California Central Valley *O. mykiss*, the use |
| 10 | of such characteristics to distinguish between resident |
| 11 | and anadromous may result in Defendants' (a) |
| 12 | determining that an anadromous adult was taken in |
| 13 | violation of the ESA when it was in fact a large |
| 14 | resident adult or (b) designating streams as containing |
| 15 | protected anadromous adults when they in fact only |
| 16 | contain large resident adults. |
| 17 | (7) NMFS acted unlawfully by (a) failing to provide genetic |
| 18 | evidence that naturally-spawned and hatchery spawned |
| 19 | California Central Valley *O. mykiss*, whether anadromous |
| 20 | or resident, that co-occur within the same stream are |
| 21 | genetically distinct; (b) including within the DPS |
| 22 | certain streams that are dominated by genetically out- |
| 23 | of-DPS *O. mykiss*; and (c) automatically classifying |
| 24 | naturally spawned progeny of out-of-DPS parents as |
| 25 | within-DPS (i.e. protected) *O. mykiss*. |
| 26 | (8) NMFS's failure to conduct the *O. mykiss* listing jointly |
| 27 | with FWS is arbitrary and capricious because the two |
| 28 | agencies agreed to jointly list certain species in a |

5

           1974 MOU between the two agencies,.

(9)    NMFS lacked any basis for concluding that the California Central Valley DPS should be listed as threatened, a determination which requires an examination of five threats: destruction of habitat or range, overutilization, disease or predation, inadequacy of existing regulatory mechanisms, and other natural and manmade factors affecting the continued existence of the species.

(10)   NMFS's decision to include the North Valley Floor, Upper Calaveras, Stanislaus River, San Joaquin Valley Floor, Delta-Mendota Canal, and North Diablo Range Hydrologic Unit as critical habitat for *O. mykiss* was arbitrary and capricious.

The First, Third, and Fourth claims in the *Grange* case substantially overlap with the First, Second, and Fourth Claims in the MID case.

**B.**    **Additional Chronology**.

Counsel for the Plaintiffs in *MID II* claim not to have been aware of the *Grange* case at all until August 2006. (*See* Reply, Doc. 69, at 13.) A brief chronology is necessary to understanding (a) how this might have occurred and (b) why this motion to consolidate was not filed until January 2007.

Both *Grange* and *MID II* were preceded by *Modesto Irrigation District v. Evans*, 1:02-cv-06553 OWW DLB ("*MID I*"), filed in December 2002, which successfully challenged NMFS's previous listing of the California Central Valley *O. mykiss*. Summary judgment invalidating the previous California Central Valley *O.*

**6**

*mykiss* listing was entered in favor of the *MID I* plaintiffs on May 12, 2004.  (*MID I*, Doc. 79.)  Initially, the listing was allowed to remain in force during remand.  The district court gave the Federal Defendants several extensions of time to file a revised listing, setting a final deadline of December 14, 2005. (*See MID I*, Doc. 112.)  However, the Federal Defendants failed to issue a new listing by that deadline, so the initial listing was vacated.  (*Id.*)

As explained above, a new listing was published on January 5, 2006.  On March 20, 2006, the Pacific Legal Foundation ("PLF"), which represents the *Grange* Plaintiffs, filed their lawsuit challenging the new listing with respect to all five California populations of *O. mykiss*, apparently without informing counsel for the Plaintiffs in *MID I*.

On April 14, 2006, the *MID I* Plaintiffs filed their renewed challenge to the California Central Valley O. mykiss listing, *MID II*.

On May 12, 2006, the district court entered final judgment in *MID I*.  The order formally granted PLF amicus status in any renewed challenge in the *MID II* case.  (Doc. 112 at 4.)  PLF still apparently did not inform counsel for the MID Plaintiffs that it had already filed its own lawsuit.  Nor did <u>any party</u> to <u>either lawsuit</u> file notices indicating that *Grange* and *MID II* were related cases until January 7, 2007, one day prior to oral argument on the motions for summary judgment in Grange.

On May 30, 2006, the Federal Defendants answered the *Grange* complaint.

On July 31, 2006, the Federal Defendants answered the *MID II*

**7**

complaint.

In August 2006, the *MID II* Plaintiffs claimed to learn of the *Grange* complaint for the first time

On September 13, 2006, the Administrative Record ("AR") in *Grange* was produced.

On September 26, 2006, the Federal Defendants informed counsel for the *MID II* Plaintiffs that the AR for *MID II* would not be ready until December 1, 2006.

By November 20, 2006, cross-motions for summary judgment in *Grange* were fully briefed.

On December 1, 2006, the AR was produced in *MID II*.

On January 8, 2007, oral argument was heard on cross-motions for summary judgment in *Grange*.

Shortly thereafter, in January 2007, the *MID II* Plaintiffs realized that the AR produced in *MID II* was identical to that produced in the Grange case.

On January 24, 2007, the *MID II* Plaintiffs filed their motion to consolidate.

### III.   DISCUSSION

**A.   Legal Framework**.

Consolidation of cases is governed by Federal Rule of Civil Procedure 42(a), which provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

**8**

Whether or not to consolidate cases or proceedings rests in the sound discretion of the district court. *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987); *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1531 (5th Cir. 1993); Shump v. Balka, 574 F.2d 1341, 1344 (10th Cir. 1978); *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998). First, a court must determine whether there are common questions of law or fact. Fed. R. Civ. Pro. 42. Then, a court "must balance the interest of judicial convenience against the potential for delay, confusion and prejudice that may result from such consolidation." *Bank of Montreal v. Eagle Assoc.*, 117 F.R.D. 530, 532 (S.D.N.Y. 1987). Factors such as differing trial dates or stages of discovery usually weigh against consolidation. 9 Wright & Miller, Federal Practice and Procedure § 2383 (2006).

**B.     The Cases Share Common Questions of Law and Fact**.

Defendant-Intervenors argue that the cases are not as similar as the *MID II* Plaintiffs suggest. Specifically, Defendant-Intervenors suggest that, while the *Grange* case "primarily challenges [NMFS's] consideration of hatchery fish in its decision to protect five populations of steelhead [] in California," *MID II* "center[s] upon the allegation that NMFS unlawfully applied the [DPS] Policy in its listing of anadromous, but not co-occurring resident *O. mykiss*." (Doc. 66 at 3.) This argument is not particularly compelling. First, Defendant-Intervenors describe the *Grange* case in an overly narrow fashion. In addition to challenging the hatchery versus naturally spawned distinction employed in the listings, the *Grange* case also alleges that NMFS unlawfully failed to include both resident and

anadromous fish in the same DPSs and that NMFS unlawfully applied the DPS Policy in reaching its listing decisions. These claims substantially overlap with claims in *MID II*.

### C. **Judicial Economy**.

Here, the *MID II* Plaintiffs maintain that consolidation will conserve judicial resources and avoid the issuance of potentially conflicting opinions. Federal Defendants disagree, arguing that "there will be absolutely no judicial economy in avoiding overlapping motions or hearings" because the district court has already reviewed three sets of cross-motions for summary judgment in the Grange case and the case is "all but decided." (Doc. 63-1 at 4.)

First, the Federal Defendants are incorrect that the *Grange* case is "all but decided." Although the district court has invested considerable time and resources into drafting an opinion, that process is not yet complete and has been made more challenging by the fact that, as discussed above, the briefs in the *Grange* case are largely devoid of substantive references to the administrative record.[1] On the one hand, this can be explained by the fact that the arguments raised by the Plaintiffs in *Grange* were largely legal and arguably could be addressed without a penetrating examination of the administrative record. However, Federal Defendants' cross-motion for summary judgment in the *Grange* case requests that the district court validate the

---

[1] The breifs in the *Grange* case also lack focus and clarity on many other levels. The parties did not clearly brief the applicable standard of review, nor did they thoroughly examine all of the legal issues raised.

**10**

<u>listings and confirm that they are based on the best available science</u>. (*See Grange*, Doc. 45 at 23-24 (Federal Defendants Argued: "With respect to whether NMFS properly applied the DPS policy to the best available data to delineate steelhead-only DPSs, Plaintiffs primarily argue that resident rainbow trout share the same habitat and interbreed with steelhead, so therefore steelhead cannot be considered discrete....However, NMFS found that steelhead-only populations meet the discreteness criterion of the DPS policy because resident rainbow trout and steelhead remain markedly separate physically, physiologically, ecologically, and behaviorally. [Quoting extensively from the Federal Register.]  Based on these factors, NMFS concluded that steelhead are discrete from rainbow trout, within the meaning of the DPS policy.").)  This analysis cannot be verified without a detailed examination of the administrative record.

To the extent that the *MID II* Plaintiffs "plan to present arguments and citations from the AR during their case that are different from those presented by the *Grange* plaintiffs," consolidation may indeed conserve judicial resources by facilitating the court's examination of the record.  (Doc. 58 at 7.)  Moreover, absent consolidation, there is a real risk that the district court may issue inconsistent rulings on those claims for which there is substantial overlap.  Of particular note is the fact that the *MID II* Plaintiffs indicate that will be raising new legal arguments regarding some of the same legal challenges made in the *Grange* case.

**11**

**D.   Delay, Confusion, and/or Prejudice.**

Finally, a court must balance any gains in judicial economy against any delay, confusion, or prejudice that might result from consolidation. Here, although there would be some delay in issuing a decision on summary judgment in the *Grange* case if the cases were consolidated, it is not clear how any party would be prejudiced by such delay. Nor have Defendants or Defendant-Intervenors indicated how they would be otherwise prejudiced or how additional confusion would be created by consolidation.

This is a close call. Although this motion to consolidate comes at a procedurally awkward stage in the *Grange* case, given that motions for summary judgment are under submission, the overlap between the two cases and the potential for the arguments in *MID II* to shed light on the issues raised in the *Grange* case tip the scales slightly in favor of consolidation. In an administrative record case, the district court's ultimate role is to reach the correct legal conclusion based upon the law and the administrative record. Consolidation appears likely to facilitate this endeavor.

The MID II Plaintiffs' motion to consolidate is **GRANTED, but the cases will be consolidated for purposes of summary judgment only**.

**E.   Defendant-Intervenor's Request That The Cases Not Be Completely Merged**.

In the event that the motion to consolidate is granted, Defendant Intervenors request that the Court explicitly state that it is not merging the cases such that the parties in one case become parties to the other. *See Johnson v. Manhattan Ry.*

**12**

*Co.*, 289 U.S. 479, 496097 (1933)(expressing the generally held rule that "consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those parties in one suit parties in another"). Specifically, the Defendant-Intervenors in *MID II*, the Delta Fly Fishers and Center for Biological Diversity, indicate that they chose to intervene in the *MID II* case to defend against the particular challenge to the California Central Valley listing and do not desire to become involved in the much broader *Grange* challenge. Plaintiffs in the MID II case do not object to Defendant-Intervenors' request. Accordingly, the request not to consolidate for other purposes is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, *Modesto Irrigation District, v. Gutierrez.*, 1:06-CV-453 OWW DLB ("*MID II*") and *California State Grange v. National Marine Fisheries Service*, 1:06-CV-0308 OWW DLB ("*Grange*") are consolidated for the limited purpose of ruling on the pending summary judgment motions in both cases. No further oral argument or briefing will be permitted in the *Grange* case, as cross motions for summary judgment in that case are already under submission. Consolidation for the above-mentioned purpose does <u>not</u> merge the two cases such that the parties in one case become parties to the other.

IT IS SO ORDERED.

**Dated:   March 21, 2007**         /s/ Oliver W. Wanger
b2e55c                              UNITED STATES DISTRICT JUDGE